■ EDGARDO BUSTAMANTE et al., Respondents, v WESTINGHOUSE ELEVATOR COMPANY, Appellant. [600 NYS2d 35] —Order of the Supreme Court, New York County (Beatrice Shainswit, J.), entered on or about March 18, 1992, which, *inter alia,* set aside the jury's verdict and directed a new trial on all issues, unanimously affirmed, without costs.

Plaintiff alleges that he sustained injury when the hydraulically-operated elevator in which he was riding descended below the level of the basement floor and contacted the buffers, causing it to stop abruptly. Defendant maintenance company had the exclusive contract to maintain and repair all elevators in the New York Helmsley Hotel, where plaintiff was employed. The other occupant of the elevator, Cesar Benoit, who was not injured, testified that the elevator was not going any faster than normal, but that it went "a little lower than it's supposed to be" and "it bounced back." When the elevator came to rest, Benoit said he saw plaintiff standing next to him. Only after he left the elevator did he see plaintiff on the floor.

Plaintiff was brought to the security office of the Helmsley

and complained of pain in his back, neck and shoulder. He was then taken to a medical center, where he was x-rayed and given a neck brace.

At trial, the principal question with respect to liability was what had caused the elevator to hit the buffers without stopping at the basement level. The evidence on this issue consisted of the testimony of defendant's repair mechanic, the testimony of two elevator experts and the service history of the elevator. Testimony was received that the rated speed of the elevator was a "relatively slow" 3.3 feet per second and that an occupant of an elevator, travelling at this speed and stopping suddenly, would be subjected to a force equivalent to "jumping off a curb." Repairs were made to the elevator on the morning of the accident (Friday, December 9, 1988) and on the following Monday.

Two questions were submitted to the jury: "Was Westinghouse Elevator Co. negligent?" to which the answer was "Yes", and, "Was its negligence a cause of the accident?" to which the answer was "No". As a result of this decision, plaintiff moved to set aside the verdict as being inconsistent. The court granted the motion and ordered a new trial, stating: "Once there was a finding of negligence, upon any fair interpretation of the evidence, proximate cause on this record was irresistibly established."

As this Court has noted, posing the wrong question usually leads to an answer which is less than enlightening *(Lusenskas v Axelrod,* 183 AD2d 244, 247, *appeal dismissed* 81 NY2d 300). The parties, on appeal, dispute whether the jurors' resolution of the questions submitted for their determination is irreconcilable under the various legal theories presented at trial. However, while there is little doubt, as Supreme Court decided, that negligence in maintenance procedures apparently found by the jury must have been the proximate cause of the *accident,* such a finding is not sufficient, as a matter of law, to establish defendant's liability. Rather, the operative question is whether or not the accident was the proximate cause of plaintiff's *injury* (Prosser, Torts § 30, at 143 [4th ed]).

There is ample evidence which could have led the jury to conclude that, while defendant's negligence caused the accident, the requisite nexus between that event and plaintiff's condition was absent. The record includes a radiology report dated November 16, 1987 that notes changes in the shoulders and clavicles, consistent with degenerative joint disease and believed by the radiologist to be "secondary to prior trauma." Together with the testimony of defendant's expert witness

that the shock experienced in the accident would be akin to that resulting from "jumping off a curb", the jurors might well have concluded that the accident was not the proximate cause of plaintiff's ailment. However, the question was not directly addressed to them, and it is inappropriate to engage in speculation regarding the process by which the jury arrived at the verdict. Therefore, we agree with Supreme Court to the extent that a new trial is required at which the correct interrogatory is posed to the jury. Concur—Rosenberger, J. P., Ellerin, Asch and Rubin, JJ.